IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PABLO QUINONES, ET AL.,

    Plaintiffs,

        v.

METRO SANTURCE, INC., ET AL.,

    Defendants.

**Civil No. 12-1658 (SEC)**

**MEMORANDUM AND ORDER**

    Before the Court are defendant Sandra Rosario Lebrón's motion for summary judgment, Docket # 32, the plaintiffs' opposition thereto, Docket # 44, and the parties' reply memoranda. Dockets ## 51, 59. After reviewing the filings and the applicable law, this motion is **DENIED**.

**Background**

    This diversity medical malpractice action, brought under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, concerns the alleged wrongful death of Lydia Quiñones Otero. The plaintiffs are Quiñones Otero's two sons, Pablo Quiñones and Carlos Ayala. The defendants are Dr. Sandra Rosario Lebrón (Rosario), the pulmonologist that, according to the complaint, negligently treated Quiñones Otero; and the hospital where Quiñones Otero sought treatment, Metro Santurce, Inc. Pertinently, the gist of the allegations against Rosario is that her negligence—an untimely and erroneous extubation—caused bacteria to enter Quiñones Otero's lungs. That infection in turn developed into pneumonia, which ultimately provoked Quiñones Otero's demise. See generally Docket # 1; Docket # 32-2, p. 9.

    In due course, Rosario moved for summary judgment. She musters one narrow contention: The "total absence of evidence to connect the order to extubate the patient given by Dr. Rosario, with the alleged bacterial contamination and the eventual demise of Mrs.

**Civ. No. 12-1658 (SEC)**                                                                                                         **Page 2**

Quiñones." Docket # 32, p. 5. The plaintiffs opposed, maintaining that the issue of causation is unamenable to disposition via summary judgment. Docket # 44.

**Discussion**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014). "The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). But where, as here, the movant "lacks the ultimate burden of persuasion at trial," her initial burden of production can be satisfied by "point[ing] to evidentiary materials already on file—such as answers to interrogatories, affidavits, or portions of depositions—that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, (1986)) (footnote omitted).

Under Puerto Rico law, which governs this diversity action, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, (1938), a medical malpractice plaintiff must demonstrate "(1) the basic norms . . . of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of a patient; and (3) a causal relation between the act or the omission of the physician and the injury by the patient." Santana-Concepción v. Centro Médico del Turabo, Inc., No. 12-2013, --- F.3d ----, 2014 WL 4695852, *4 (1st Cir. Sept. 23, 2014) (quoting Santiago v. Hosp. Cayetano Coll y Toste, 260 F.Supp.2d 373, 381 (D.P.R. 2003)). For purposes of her summary-judgment motion, Rosario concedes that the first two prongs are "contested." Docket # 32-2, p. 7. So the analysis zeroes in on the third element — causation or lack thereof. See Anaya-Burgos v. Lasalvia-Prisco, 607 F.3d 269, 274 (1st Cir. 2010) (discussing the "adequate causation" doctrine and its similarity with proximate cause) (citation and internal quotation marks omitted).

**Civ. No. 12-1658 (SEC)**                                                                                      **Page 3**

Here, however, the record is insufficiently developed for summary-judgment resolution in favor of Rosario on the ground of an absence of causation. For starters, although Rosario's supporting statement of material facts, see D.P.R. Civ. R. 56(b), hinges entirely on the deposition testimony of the plaintiffs' expert witness, she inexplicably marshals only stray fragments from that deposition. But because "a factfinder normally cannot find causation without the assistance of expert testimony to clarify complex medical and scientific issues," Rojas-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 43 (1st Cir. 2005) (emphasis added), one would expect that Rosario, having bet the house on that testimony, would have marshaled the entire deposition. Be that as it may, the attached fragments do not establish the absence of a genuine issue of material fact, cf. Mack v. Cape Elizabeth Sch. Bd., 553 F.2d 720, 722 (1st Cir. 1977) (incomplete affidavits), as "[t]he deposition[ ] alone contain[s] disputed crucial issues sufficient to require resolution at trial." Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930 (1st Cir. 1983). So Rosario falls short of shouldering her initial burden of demonstrating the absence of a genuine issue of material fact and that she is entitled to judgment as a matter of law. See Carmona, 215 F.3d at 133 ("A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact.").

In all events, the plaintiffs have met their burden, if only barely, of furnishing competent evidence to warrant a "trialworthy issue vis-à-vis the element of causation." Cortés-Irizarry v. Corporación Insular De Seguros, 111 F.3d 184, 191 (1st Cir. 1997) (citation omitted).[1] As the

---

[1] The plaintiffs furnish an unsworn "preliminary expert witness report," but that unauthenticated document constitutes inadmissible hearsay. See Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); Ramírez-Ortiz v. Corporación Del Centro Cardiovascular de Puerto Rico y Del Caribe, No. 12-2024, --- F.Supp.2d ----, 2014 WL 3611320, *3

**Civ. No. 12-1658 (SEC)**                                                                                          **Page 4**

summary-judgment record stands, and after drawing all reasonable inferences in the plaintiffs' favor, it cannot be said that no reasonable jury could conclude that the bacteria that entered the decedent's lungs—and eventually led to her demise—were due to the "untimely extubation" ordered by Rosario. Docket # 47-1, p. 21:5-6. That the plaintiffs' expert could not say for certain that the extubation (and ensuing "reintubation") was the actual "event that brought bacteria[ ] with it," Docket # 31-17:19-20, while obviously pertinent, "is not controlling." Heddinger v. Ashford Mem'l Cmty. Hosp., 734 F.2d 81, 84 (1st Cir. 1984); see also id. ("Heddinger was not required to show that the non-union of the finger was caused solely by the delayed treatment at Ashford just as she was not required to show that delayed treatment was the sole cause of the loss of the finger."); accord Carlson v. Chisholm-Moore Hoist Corp., 281 F.2d 766, 770 (2d Cir.1960) (Friendly, J.).

But even assuming, favorably to Rosario, that several mutually exclusive possibilities caused the contamination, see Viuda de Lopez v. E.L.A., 4 P.R. Offic. Trans. 251, 256-257 (1975), summary judgment would still be inappropriate. Drawing all inferences in the plaintiffs' favor, it appears from the incomplete record that their expert testified that Rosario's alleged negligence was "the most probable of the mutually exclusive alternatives." Heddinger, 734 F.2d at 85; see Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 168 (1st Cir. 2005). For instance, the plaintiffs' expert testified that the first "tube" "comes in a sterile package," so the contamination "would [have been caused by] one of the last [intubations]." Docket # 32-17; see also Docket # 32-18:22-24 (downplaying other scenarios); Docket # 31-16: 22-24 (similar). Of course, other plausible causes for the contamination abound (e.g., the first intubation), which,

---

(D.P.R. July 23, 2014) (collecting circuit caselaw on this point). But because Rosario raises no evidentiary objections to that report, this court is "free to consider it." Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 421 n. 2 (1st Cir. 2014). This is of no moment, however, as the same result would obtain even without this preliminary expert report.

**Civ. No. 12-1658 (SEC)**                                                                                        **Page 5**

if believed, could doom the claims against Rosario; but the conflicting yet plausible inferences drawn therefrom are precisely what preclude summary judgment in favor of Rosario. That is because the rules associated with summary-judgment practice "admit of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record." Cortés-Irizarry, 111 F.3d at 192 (citation and internal quotation marks omitted). Conversely, "[i]n their deliberations, jurors are permitted to draw reasonable inferences from the evidence and to assess the credibility of . . . expert witnesses." Quiñones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 5 (1st Cir.1992); see also Marshall v. Pérez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) ("In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question [of proximate causation] is one for the jury." (quoting Springer v. Seamen, 821 F.2d 871, 876 (1st Cir.1987))).[2]

So these issues will be decided at trial, where the jury will make up its own mind about whether the plaintiffs meet the causation requisite of their medical malpractice claim against Rosario. "Right or wrong," the plaintiffs are "entitled to present [thei]r case to a jury." Cortés-Irizarry, 111 F.3d at 192.

---

[2] See Putnam Res. v. Pateman, 958 F.2d 448, 460 (1st Cir.1992) ("When . . . the existence of proximate cause turns on an issue of superseding causation . . . the jury's role may be especially significant."); Swift v. United States, 866 F.2d 507, 510 (1st Cir.1989) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder."); see also Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) ("Proof of causation is also more difficult in a medical malpractice case than in a routine tort case because a jury must often grapple with scientific processes that are unfamiliar and involve inherent uncertainty.").

**Civ. No. 12-1658 (SEC)**                                                        **Page 6**

### Conclusion

Because the summary-judgment record shows "conflicting yet plausible inferences" that make summary judgment improper, Manganella v. Evanston Ins. Co., 702 F.3d 68, 73-74 (1st Cir. 2012), Rosario's summary-judgment motion is denied.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of September, 2014.

>                *s/ Salvador E. Casellas*
>                SALVADOR E. CASELLAS
>                U.S. Senior District Judge